Good morning, your honors. VESS, V-E-S-S, last name is Mitev, M-I-T-E-V, for the cause of the plaintiff appellant. I appreciate the panel's courtesy here today. I will try to be as brief and as succinct as possible, and hopefully this mask won't get in the way of that. Very briefly, your honors, the central issue, I believe, as elucidated by our brief, is the district court's somewhat myopic reading of the second amended complaint. The social worker at issue here, your honors, was repeatedly, summarily stripped of certain protected interests, ostracized by the school district when she raised the very real, very concrete issue of public concern, as to the imminent rise of mental health crises which the school district at issue was ill-equipped, in fact, not equipped at all to deal with. So what happens when Ms. Kennedy was given what the district viewed as a palliative measure to the public, which was to prepare an optional assignment so that the school district and the school district officials could feel better about the district's response? Well, she turned it down, your honors, because she was overwhelmed by her workload, because she was the sole social worker in the district. Immediately after that, the campaign against her began. She was removed from her position as the high school social worker, removed, demoted, transferred down to the elementary school, as well as stripped of all her leadership activities, her position as a chaperone, again, completely whitewashed, almost entirely from the district of having any presence at all. Mr. Mittem, I'm a little puzzled by the way you tell the story here. It sounded like you're suggesting that she was retaliated against for turning down this assignment, or it wasn't really an assignment, request to make a presentation. That's very accurately the catalyst for what she was being retaliated against because of what she did say. That is to say, because she was a dissident of sorts with respect to challenging the failure to have more attention to the problem. I appreciate that question. So that comes a little later in the story. And what happens is, first, she turns down the optional assignment because she sees it as a mere white glove treatment of something that's far more deep and involved. At that point, the adverse employment actions befall her. Nevertheless, she resists. Did she ever say that? I thought that her reason for turning down the assignment was quite reasonably that she was overwhelmed and that at least some folks said, well, that's okay. We have other people can do this. She was overwhelmed, Your Honor, precisely because of what happens next. She was overwhelmed because she was I'm sorry. My question was, and it was my fault for kind of elaborating on facts rather than just sticking with the question. My question was, did she ever say, I'm not going to participate in this because I think it's fake or anything of the sort? I don't believe she ever used those words at all, Judge. Any words other than I'm too busy to do this? I believe she just turned down the assignment because she was overwhelmed. However, that didn't land very well with the administration, as Your Honor's known. I'm not going to belabor the record. But can I follow up? I'm trying to understand. You've got three substantive claims as I understand it. One is a retaliatory demotion and the retaliation is for exercising some sort of protected conduct. Right? Am I right about that as understanding that as a claim? Yes. Yes. And then the second is a First Amendment claim, which I assume is the constraint on speaking to the PTA. Correct. She was embargoed, not allowed to present at PTA meetings at other district functions that were available. And again, she was- Right. Okay. And then the third is a due process claim for sort of a loud mouth sort of claim. Correct. So the, I wouldn't, not accepting this assignment because she's busy. How does that, I'm assuming that fits into your retaliatory demotion claim? She didn't accept the assignment because she was overworked. She was told it was an optional assignment. After that dissidence, dissident act as it were, which was, it was viewed as a dissident act, she then becomes, you know, retaliated against by having all of these perks, benefits. So is it your contention that not accepting the assignment because she was busy amounted to some sort of First Amendment activity? It was protected, Your Honor, when she, number one, she was performing all of her duties exemplarily. Number two, it was presented to her as an optional assignment. And when she complained about thereafter to the task, what the district was doing in terms of, other than optional assignments, other than banners and parades, what they were actually doing, what were the security measures? Why were people still being let in the building? Then additionally, she became further retaliated against, and that was laid out again in the Second Amendment. And that's the due process claim? Correct. So I'm just trying to figure out where that fact fits into your various legal theories. I can see how it goes to your due process claim. I'm struggling with the retaliatory for protected conduct claim, and I'm just trying to understand what, in what way the Constitution or some statute cloaks her decision to decline the optional assignment with the kind of protection that you're invoking in that claim. I guess perhaps it could be more finely stated that the refusal to accept what was purported to be an optional assignment, then she suffered close in time adverse employment actions, which she continued to suffer until she filed the lawsuit, and in fact thereafter. But to circle back, Your Honors, perhaps the most egregious, in our view, abridgment was the embargo upon her free speech, which I believe the district court actually spent quite some time, at least in its first memorandum in order, saying the defendant's argument on this point is completely unavailing. I'm not deciding whether or not this was protected speech, whether or not this was in fact something that should have happened or should not have happened. This needs more discovery. Part and parcel of that, I'm assuming, Your Honors. Maybe we should, you haven't got much time left. What the decision below turned on, the judge actually thought there was a potential First Amendment claim here against somebody, but that was the somebody against whom claims were withdrawn, and that there was no claim against the school district. And so you may want to turn to that question, but I do have one just simple factual question. Were the claims against the other, the individuals, settled, or were they just unilaterally withdrawn? They were withdrawn, and we proceeded against the district, and I'll get to Your Honors' question. I appreciate you for that. Basically, the district court hinged its decision on the, on its perception that we did not plead Monell adequately. I submit to Your Honors that we did paragraph 104 through 117 of the Second Amended Complaint painstakingly plead to practice policy and custom. That's all that's required. Agosto cited by the district, Jeff's jet, all of those were summary judgment decisions, Your Honors, which turned after discovery on those dispositive issues. But in fact, the deliberate moving force, which is the Huntington case, which is again Agosto, that we alleged was the school district's board. And again, under Monell, all you have to do is custom practice. Well, you say, but it's somewhat conclusory to say there is a custom and policy, the kind of factual allegations that might make that plausible would be, for example, if other dissidents had been disciplined. And in fact, we, we allege, and Your Honors, I think it's in paragraph 112 and 115 of the Second Amended Complaint, sort of precisely that. I know my time is up, but I'll say this. Well, but, but again, you allege that there were others, but with no reference to even a description of who that could be, let alone a name or an incident or a fact about who said what, and then got disciplined in what way. And I would only say this. I think the remedy here is, Your Honors, in the circuit, we've seen fifth, sixth, seventh amendments of complaint. There was no harm and no prejudice, no undue delay, no unfairness to the defendant if we had a chance to replete it again. It's happened before, and nor can the defendants allege that. Have you asked either in the district court or here for leave to file another amended complaint with any details of what it would actually say? We did not submit a proposed amendment complaint. We did ask for it in our brief, Judge. And did you ask for it below? I believe that we did at the pre-motion, yes, we did at the pre-motion conference at the defendant's site as supposedly us abandoning the final policymaking theory. We didn't ask for that. Thank you, Judges. Good morning. May it please the court. This is not the right place, sorry. I'm short. Oh, okay. My name is Chelsea Weisbord from Socklofstern LLP, and I represent the Apelli Bethpage Union Free School District. I'm so sorry. As long as it wasn't mine. I'm mortified. I'm so sorry. I'd like to focus on the Monell issue, which was the main, you know, the primary focus of the decision that is being appealed here. When an appellant voluntarily discontinued all of her claims against the individual defendant, she left the district as the sole defendant in the case. And with the district as the only defendant, plaintiff, in addition to satisfying the elements of her First Amendment and 14th Amendment claims, must also show Monell liability. The district court properly dismissed this action based on the appellant's failure to do so. Appellant had... Can I sort of hone in on something regarding this? It's really confusing me. You emphasize that the superintendent doesn't speak for the district on questions of transfer and things like that. The board owns those. Correct. The board is the final policymaker regarding personnel decisions, including transfer employees. So insofar as she has alleged that she was transferred in retaliation, doesn't that on an action that, by your own argument, can only be undertaken by the board, by the highest policymaking body in this municipal entity? Well, for Monell purposes, in order for appellant to state a claim, she has to show that a final policymaker was the one who violated her constitutional rights. The board, it doesn't count if the board did it? I thought the whole board... There's no allegation in any of the pleadings to that effect. But there is an allegation. She was transferred and you yourself say only the board has the power to transfer her. I thought you were going to say there's no allegation that the board transferred her for retaliatory reasons or had any kind of animus or participated in the discrimination. I suppose if somebody else is motivated to stimulate a transfer for bad reasons, but the board doesn't know what those reasons are, that might be a problem. Well, yes. The plaintiff alleges that it was her direct supervisor, the director of guidance, who came into her office and told her that she was being reassigned from the high school to the elementary school. She does not allege that... I don't think she says anything about his animus. I thought the idea was that the superintendent was the person who was mad, or her principal at least. Her principal was mad at her because notwithstanding that the superintendent said, this is an optional assignment, it makes me look bad if my people don't contribute here. I thought that was item one on someone having an animus. And then this was sort of attributed in general to the superintendent not liking her complaining. And he's the one who made the decision to transfer her. But it's not very clear actually in the complaint who made the decision to transfer her. But I guess he's the one who banned her from the PTA, right? Yes. Well, the complaint alleges that it was the superintendent who was involved in the decision regarding the PTA. And the complaint, as for the reassignment, the plaintiff, the appellant alleges that it was her direct supervisor, the director of guidance, who told her about that. He's quite explicit. What he tells her according to the complaint is, okay, you're being transferred. Don't talk to me about this. You got to talk to somebody higher up, right? He referred her to the assistant superintendent? Yes, to answer any questions about the reassignment. So while a decision maker may have facilitated the reassignment, that's not what creates Monell liability. What creates Monell liability is the board taking an action? Yes. Either there has to be some express policy that was being followed that led to the violation of the constitutional rights or a longstanding practice or custom. Or this third theory, which is the crux of plaintiff's case, which there has to be that the action that allegedly violated her constitutional rights had to have been taken by an individual with final policymaking authority. Or by the final policymaking body itself, the board. Correct. But the board, the plaintiff does not allege that the board, any conduct by the board, let alone any discriminatory conduct. There's not a single allegation in there. Am I wrong in understanding that your argument is the board owned, only the board can transfer people? The board sets policy, is the final policymaker on transfers. Can a transfer be, an individual transfer be undertaken without the involvement of the board? A reassignment could be facilitated through a district administrator. It could be facilitated, but the decision to do it, can that be undertaken by anybody other than the board? Yes, the board, the superintendent act, you know, enforces board policy and runs the school, but does not set the policy. And there was no policy at play here. What you had here was a decision maker below the policymaking level, engaging in conduct that plaintiff claims alleged her, you know, violated her constitutional rights, but that's not a Monell claim. What I'm struggling with though, is, is there's a lot of claim here. I've never seen Monell interposed in a lot of them, like somebody suffers a, let's say they're fired or transferred or something like that. I've never seen, and that's the due process argument. And the fact that they, they, they were fired is on its face evidence that the entity in question did the firing. And I'm trying to figure out whether there's something unique about this case that, that requires us to do a Monell analysis of a personnel action or whether I just don't understand how those two fit together in the law more broadly. Well, in this case, plaintiff wasn't, you know, terminated or demoted. It was a lateral transfer from one building to another. She was a social worker in the high school and to fill department needs or the district's needs, she was relocated to the elementary school in the same position as social worker. There was no change in pay or benefits. Plaintiff alleges that she lost a $3,800 stipend in connection with being faculty advisor to a high school club once she was relocated, but it was otherwise a lateral transfer. Which, which is kind of what the district court said in the prior decision, right? That she didn't allege a property interest in being a counselor at the high school versus the electrical. But in the subsequent decision, the one we're actually reviewing, the district court relied entirely on this Monell theory across the board. And so I'm now really pressing on the Monell argument, which is somebody makes the decision to transfer, right? It's either the board or somebody acting the board said. And if your argument is that superintendent doesn't have the authority to act in the board's stead, that can only be done by the board, then it seems to me you're conceding that we don't have, she doesn't have to do anything further to get liability on the part of the board. Well, no, my argument is not that, that the, you know, superintendent or other high level district administrators can't make decisions. It's that they're not the, the final policy makers on the issues involved. And, and the act, the only final policy maker on these personnel issues is the board of education. And there's no allegation that the board engaged in any, you know, discrimination. But doesn't, I mean, section, under the New York education law, section 1711E, the superintendent of schools has the authority to transfer teachers from one school to another. Or from one grade of the course of study to another grade in such course. And then he's supposed to, he or she is supposed to report immediately such transfers to such board for its consideration and actions. So it sounds as if under the statute, the superintendent can transfer at least a teacher. I mean, I, I don't know that there's, you know, maybe I didn't underline the right piece here about other officials. But it would seem that there is an authority to transfer personnel in the superintendent that then has to report this transfer to the board, which then could overrule it, I guess. And then in the, this is not part of the record, but it's a public document in terms of the bylaws, I guess, of this particular district. Section, or policy 2240 says that the superintendent is entitled to employ, promote, discipline, and deploy staff, that that power is delegated to the superintendent. So, I mean, it's, granted, part of the problem here lies with the complaint, which doesn't tell us actually who supposedly did the transfer or made the transfer decision. All we hear is who told her about it and what that person said about to whom she could complain or ask questions, which was the assistant superintendent. There is no allegation, I don't think, as to who made the decision to do the transfer. But the power to transfer, at least subject to later board action, may well be delegated to the superintendent. I mean, is that, am I right or wrong about what those rules are? Sure, well, the board certainly gives, the superintendent has the authority to enforce the policy, well, to carry out the policies. What you have here, you have a district, which is comprised of a board. You know, it requires agents to do its business. So the superintendent is an agent of the board that is able to make decisions, some that are not non-reviewable. But the case law says that even if a district employee has discretion to make unreviewable decisions, if they're below that policymaking level, it doesn't matter for Monell purposes. Right. But if the power to transfer ultimately were with the board, if we found something saying that they have the ultimate power to make the transfer or they need to vote, the superintendent can do something, but he sends a list of, here are my assignments and they have to vote on it. And they're the final decision maker. Do they have to have the animus? In other words, if it were the case that we were to learn that the board has the final approval of transfers and they did approve this one, is there a Monell problem if there's no evidence or allegation that the board was prejudiced against her? Yes, that is a problem for plaintiff because, you know, Monell does not allow for vicarious liability. A plaintiff has to show some act of discriminatory conduct by the school district. And that's where these three theories come in. Those are the three ways to show that. And plaintiff has not been able to show either of the three theories. And just to clarify, there was no request for leave to amend the second amended complaint before the district court. And even if there was, the district court, it was well within the district court's discretion to dismiss these claims with prejudice. Plaintiff was given several opportunities to cure the deficiencies regarding Monell liability and even claims that she was provided with a detailed road map provided by Judge Chen herself in the September 30th, 2021 decision. Despite that road map, the second amended complaint still fails to state a Monell claim and there's simply no reason to allow another opportunity to amend. Thanks.  Thank you. I appreciate that, Your Honors. I don't think I'll need the two minutes up. Very, very briefly, Your Honors. From page A274 to A285 of the appendix are the myriad detailed allegations of what plaintiff alleged in just her second amended complaint. And then at paragraph 108, the allegation is that these adverse employment acts with the explicit and tacit authority of the board of the education and carried out by the people under them, which are, by the way, that the superintendent is the chief executive of the board. And Your Honor is completely correct on the education law as to the authority that they have. So if the superintendent doesn't need the board approval, then there's no Monell problem. If, however, the district still argues that there is a Monell problem, we certainly pleaded it. And again, Your Honors, just to tag it up here. I mean, our case law distinguishes between final decision maker and final policy maker. So if even the person has sometimes seemed peculiar to me, but it does seem to be what the case law suggests. Even if the person with ultimate authority to hire and fire does something wrongful, violate someone's constitutional rights, you can, of course, sue that person because that person is still acting under color of the authority granted by the state. But that doesn't mean that there is a policy on behalf of the municipality of taking this kind of discriminatory or retaliatory or otherwise unconstitutional action. If it's not the policymaking body that actually does the discrimination or there is some regular custom or policy known to or created by the policymaking body. I appreciate that question. And that presents the oral boros in this case, Your Honor. And that is that by dint of the chief executive of the board, the superintendent carrying out its edict, which we alleged, again, and the district courts hyper-focusing only in this final theory, although we also pleaded custom usage and policy, that's our argument, Judge. In other words, we should have gotten the opportunity to either file a third amended complaint or proceed this one, get some discovery, and find out what is what. That's Augusta, by the way. This court, Augusta, the only theory pursued in that case was the final policymaker theory. Here, we alleged all three. That's my time, Judge. Thanks very much. Thank you. We'll reserve the decision. And we'll turn to sportsinsurance.com versus Hanover Insurance. Thank you. Go ahead, Mr. Kirk. Thank you, Your Honor. Good morning, Your Honors. Edward Kirk from Cladding Co., U.S. LLP for appellant to Hanover Insurance Company. This insurance coverage action is time-barred and should be dismissed in its entirety, pursuant to the contractual limitations provision of the policy. That contractual limitations clause, condition M of the crime policy at issue here, required plaintiff to bring any legal action against Hanover involving loss within two years of the date the plaintiff discovered the loss. This language is very clear. As the district court even acknowledged, it's exceptionally clear. Plaintiffs allege that it discovered its loss in January 2016. This is in the complaint. But it failed to file this action until March 21, 2020, more than four years later. Therefore, this action, the entire legal action must be dismissed as it's time-barred by the policy's contractual limitation clause. Now, the district court correctly found that plaintiff failed to comply with this limitation clause and dismissed the breach of contract claim. However, it erred by allowing plaintiff to continue this legal action and pursue coverage for its alleged loss for the same loss based on the same conduct under its implied covenant and declaratory judgment claim. Therefore, the assent court essentially allowed the plaintiff to continue to pursue the same claim for the same losses, just using different theories of liability, which are duplicative of the breach of contract claim. If it was an implied covenant claim for a different set of losses, let's say they didn't, property insurer doesn't timely provide payment and then the building gets rained on and collapses and they're seeking good faith and fair dealing claim for this slow adjustment.